*Mr. S. M. Chris Franzblau* argued the cause for appellants (*Messrs. Franzblau, Falkin & DiMarzio,* attorneys).

*Mr. Joseph C. Glavin, Jr.* argued the cause for respondents.

PER CURIAM. With leave of the Supreme Court, defendants appeal from an interlocutory order entered in the trial court. By that order the trial court declared void as against public policy a restrictive covenant contained in the partnership agreement of the former law firm known as Jung, Dwyer & Lisbona. That covenant sought to allocate designated clients to individual partners upon termination of the partnership, unrelated to retirement of a partner, and sought, for a period of five years, to restrict each partner from doing business with a client designated as belonging to another partner.

Substantially for the reasons set forth in Judge Kimmelman's opinion, reported at 133 *N. J. Super.* 343 (Ch. Div. 1975), we hold that this covenant violates *DR* 2–108(A) of the Disciplinary Rules adopted by our Supreme Court and is unenforceable.

Affirmed.

BOYS' CLUB OF CLIFTON, INC., PLAINTIFF-RESPONDENT AND CROSS-APPELLANT, v. TOWNSHIP OF JEFFERSON, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 27, 1975—Decided November 10, 1975.

Before Judges ALLCORN, KOLE and GAULKIN.

*Mr. William Lewis Pegg, Jr.,* argued the cause for appellant (*Messrs. Mills, Doyle, Hock and Murphy,* attorneys).

*Mr. Frank A. Carlet* argued the cause for respondent (*Messrs. Goldman, Carlet, Garrison and Bertoni,* attorneys).

PER CURIAM. The judge of the Division of Tax Appeals determined that Lot 1A, Block 320, in the Township of

Jefferson, owned by Boys' Club of Clifton, Inc. (Boys' Club), was exempt from real property taxes under *N. J. S. A.* 54:4–3.6 for the years 1971 and 1972. The municipality appeals from the ensuing judgment.

The provision relied on below, *N. J. S. A.* 54:4–3.6, exempts from taxation

* * * all buildings owned by a corporation created under or otherwise subject to the provisions of Title 15 of the Revised Statutes [corporations not for profit] and actually and exclusively used in the work of one or more associations or corporations organized exclusively for charitable or religious purposes * * * ; the land whereon any of the buildings hereinbefore mentioned are erected, and which may be necessary for the fair enjoyment thereof, and which is devoted to the purposes above mentioned and to no other purpose and does not exceed 5 acres in extent[1].

It is conceded that the 33.25 acres comprising Lot 15, Block 320, on which all of the buildings are located, were acquired by the Boys' Club in 1962, and Lot 1A, Block 320, the 63 acres of vacant land here involved and used in connection with the boys' camp operated by the Boys' Club, was acquired by it in 1966.

The judge held that Lot 1A was necessary to carry out the club purposes and "to further boys' welfare," and accordingly was necessary for the fair enjoyment of the "exempted buildings." He further found that, notwithstanding the receipt of $5,000 rental paid by Snow Bowl, Inc., a "non-charitable company," for use of three or four of the buildings on Lot 15 in 1972–1973, such rental was "for winter months and did not interfere with the operation of the boys' camping activities" and was "very little in comparison to the overall picture," since contributions were the

---

[1]Boys' Club also appears to rely on that provision of the statute exempting all buildings "actually and exclusively used in the work of * * * corporations organized exclusively for the moral and mental improvement of men, women and children." The result we reach herein would not be different if that provision of the statute were here involved.

main source of funds for the operation of the club and profit was not the "motivating factor" in the rental. He thus held that the exclusive use requirement of the statute was met for the year 1972. There were no such rentals in 1971.

We doubt the validity of the ruling below that, notwithstanding the receipt of rentals from an organization such as Snow Bowl, Boys' Club actually and exclusively used the building for charitable purposes within the meaning of the statute. See *Princeton Univ. Press v. Princeton,* 35 *N. J.* 209 (1961); *Trustees of Y. M. & Y. W. Hebrew Ass'n v. State Bd. of Tax Appeals,* 119 *N. J. L.* 504 (Sup. Ct. 1938), aff'd o.b. 121 *N. J. L.* 65 (E. & A. 1938) Compare *Bloomfield v. Academy of Med. of N. J.,* 47 *N. J.* 358 (1966); *Pingry Corp. v. Hillside Tp.,* 46 *N. J.* 457 (1966); *Blair Academy v. Blairstown,* 95 *N. J. Super.* 583 (App. Div. 1967), certif. den. 50 *N. J.* 293 (1967).

Nevertheless, we do not consider it necessary to rule on this question or the issue of whether Lot 1A is necessary for the fair enjoyment of the buildings on Lot 15, for we have concluded that as a matter of law this case is governed by *Sisters of Charity v. Cory,* 73 *N. J. L.* 699 (E. & A. 1907).

The statute there involved was quite similar to the present enactment. It provided that "all buildings used for charitable purposes, with the land whereon the same are erected, and which may be necessary for the fair enjoyment thereof, shall be exempt." The Court of Errors and Appeals construed this language as follows:

The primary object of the exemption is the building. Included with it in the exemption is a certain portion of land.—not *all* the land held in the same ownership and used for the same purposes, but only *the land whereon the building is erected.* These words are plainly words of limitation. No land of a charitable organization other than that upon which its building has been erected is exempted from taxation under this provision of the act. *If it acquires a tract of land and erects thereon a building which it devotes to uses exclusively charitable, and afterwards purchases other lands*

*which it devotes to the same uses, such after-acquired property, whether it be adjacent to or located at a distance from the original building is not within the exemption provision. It is not the land upon which the building is erected.* This limitation ·in the statute is just as clearly expressed, and should be given as much force as that which declares that only so much of the land upon which the building is erected as may be necessary for its enjoyment shall escape taxation. The statute creates a double test, to be applied for the purpose of determining whether or not.a given parcel of land is entitled to exemption from taxation : *First,* is it the very tract upon which the building was erected, or does it include land acquired at a period subsequent to the erection of the building? *Second,* if it is the. tract upon which the building was erected, then is all. of it necessary for the fair enjoyment of the building? Lands which do not meet the double test cannot escape taxation. It follows, there-fore, that those parcels of land belonging to this charitable organiza-tion which have been acquired by it since the. erection of its original building, and upon which no buildings have been erected which ·are exclusively devoted to the purposes of its· organization, are not ex-empted from taxation by virtue of the provision of the General Tax law which has been referred to. [At 702–703. emphasis supplied]

See also, *Chatham v. Sisters of St. Elizabeth,* 92 *N. J. L.* 409, 410 (E. & A. 1918) ; *Institute of Holy Angels v. Bender,* 79 *N. J. L.* 34, 36 (Sup. Ct. 1909) ; *Rector, etc., Christ Church v. Millburn Tp.,* 26 *N. J. Misc.* 123, 126, 57 *A.* 2d 506 (Div. Tax App. 1948).

■ The 63 acres of vacant land here involved, Lot 1A, were acquired four years after the land containing the build-ings, Lot 15. Hence Lot 1A, Block 320, is not exempt from taxation.

*Sisters of Charity* has never been overruled or distin-guished. Indeed, the present statute was originally enacted in 1918 and, to the extent here pertinent, contains sub-stantially the same language as that construed in that case. *L.* 1918, *c.* 236, § 203. Thus, only 11 years after *Sisters of Charity* the Legislature continued to use language similar to that in the statute construed therein. It is not unreason-able to infer that it did so with full knowledge of, and acquiescence in, the judicial construction placed thereon by the State's highest court. The fact that there were later amendments· of the statute without changing this specific

provision further supports this conclusion. *Brewer v. Porch*, 53 *N. J.* 167 (1969) ; *Lemke v. Bailey*, 41 *N. J.* 295 (1963).

█ Boys' Club criticizes the rationale of *Sisters of Charity* and the effect its application would have on lands presently held by other similar nonprofit organizations. It also argues that the New Jersey Supreme Court has tended in recent years to be more liberal in construing exemptions of real property owned by non-profit organizations. We need not discuss these contentions. For even if we were to agree with them, as an intermediate appellate court we are bound by the ruling in that case. *In re Education Ass'n of Passaic, Inc.*, 117 *N. J. Super.* 255, 261 (App. Div. 1971), certif. den. 60 *N. J.* 198 (1972). *See Fernandi v. Strully*, 35 *N. J.* 434, 437 (1961).

█ The fact that neither the parties nor the judge below raised the question of the applicability of *Sisters of Charity* is of no consequence. The interpretation of the statutory language by our highest appellate court must govern as a matter of law. See *Fivehouse v. Passaic Valley Water Comm.*, 127 *N. J. Super.* 451 (App. Div. 1974), certif. den. 65 *N. J.* 565 (1974).

In view of the foregoing, the judgment of the Division of Tax Appeals is reversed and judgment is directed to be entered in favor of the municipality, providing that Lot 1A, Block 320, is not exempt from real property taxation under *N. J. S. A.* 54:4–3.6.

Boys' Club cross-appealed from so much of the judgment below as failed to grant it an exemption for 1973 and 1974. By reason of our disposition of the municipality's appeal, the cross-appeal is moot. We note that Boys' Club failed to appeal the assessments with respect to these years.